IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff/Respondent, | § | |
| | § | CR. No. C-09-264 |
| v. | § | (C.A. No. C-11-311) |
| | § | |
| DIONICIO MALDONADO, | § | |
| | § | |
|     Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Dionicio Maldonado's (Maldonado) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, along with his Memorandum in Support. D.E. 109, 110.[1] The government filed its combined Response and Motion to Dismiss, which includes a motion to expand the record. D.E. 116. Maldonado did not file a Reply.

For the reasons set forth herein, the government's motion to expand the record is GRANTED, Maldonado's § 2255 motion (D.E. 109) is DENIED and the Court also DENIES him a Certificate of Appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. FACTUAL BACKGROUND AND PROCEEDINGS

**A.    Summary of Offense**

Maldonado was arrested after Border Patrol agents found over 2000 kilograms of marijuana

---

[1] Docket entry references are to the criminal case unless otherwise indicated.

in the trailer he was hauling. He was stopped at the Sarita, Texas Border Patrol Checkpoint after a drug dog alerted to his trailer. On inspection, marijuana was found sealed within wooden crates that were then placed in cardboard boxes labeled "sinks." Maldonado denied that he knew the drugs were present and claimed that he picked up the sealed trailer to deliver it to Houston. D.E. 1.

**B.      Criminal Proceedings**

Maldonado was arrested on March 13, 2009 and subsequently appointed counsel. D.E. 5. He was indicted on April 8, 2009, and charged with possession with intent to distribute more than 1000 kilograms, approximately 2090.38 kilograms, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). D.E. 8.

A superseding indictment was issued on September 9, 2009, which added a second count for transporting illegal aliens. D.E. 45.

**C.      Trial**

Trial began on November 17, 2009, and lasted two days. D.E. 88, 89. Before trial, Maldonado filed a motion to sever the alien smuggling count ( D.E. 51), which the Court granted (D.E. 89 at 3).

The marijuana in the trailer was discovered inside wooden crates that had been placed inside cardboard boxes. The boxes of marijuana were placed behind bags of gravel and boxes of tile. D.E. 88 at 137-39. The value of the marijuana was estimated to be around $4.5 million. D.E. 88 at 154.

During trial, the government proved that Maldonado paid $26,285 in cash for a 1999 Freightliner over a period of five months in 2008. D.E. 88 at 233-240. Maldonado was an independent contractor who worked for Transport 59 trucking company hauling the company's trailers. Id. at 208. Maldonado worked for 59 Transport from July 2008 through March 2009. Id.

Maldonado drove for Transport 59 three to four days a week, which in the trucking business is not a lot of driving. Id. Had Maldonado wanted to work more, he could have. Id. at 211-12. Under the terms of the agreement between Maldonado and the company, Maldonado was not supposed to haul for any other company. D.E. 88 at 214-15. Maldonado's boss got a call from the DEA agent in this case who determined that the covered trailer Maldonado was hauling when he was arrested did not belong to Transport 59. Their trailer was an open step deck trailer. Maldonado's brother returned the company trailer four or five days after Maldonado was arrested. Id. at 217-19.

In addition to his work as a truck driver, Maldonado was also a musician. Id. at 225. Maldonado had approached his employer about additional trucking jobs and whether Transport 59 was interested. They were not. Those jobs would be taking loads from the Valley area north. Id. at 226.

Maldonado told the Border Patrol Agents that he had hauled a load to the Rio Grande Valley for Transport 59 and then picked up an independent load of tile and sinks for someone else. He did not mention that he was expected to return the empty trailer in Houston. Maldonado claimed he had delivered two other loads for this other person, Chato. Id. at 180. Maldonado heard of Chato from other truck drivers. Id. Maldonado could not describe Chato's appearance, he only saw him from a distance. Id. at 185. According to Maldonado, Chato was going to call him when the load was ready. Id. at 186. When arrested, Maldonado had two telephones with him, a T-Mobile phone and a Boost Nextel phone. Id. When agents checked the call history, for the T-Mobile phone, there were no calls on the date of Maldonado's arrest. On the second phone, there were no calls to Maldonado's phone on the day of his arrest. Id. Maldonado called his employer at 59 Transport that day. Id.

The trailer Maldonado was hauling when arrested was registered to an Edward Mata, but no one had claimed the trailer or the legitimate cargo by the time of trial. Id. at 191-92.

Jose Torres from the Texas Employment Commission testified at trial. D.E. 90. He testified that a search of the TEC database of wages paid in Texas searched by Maldonado's social security number revealed no wages paid for the 8 or 9 quarters before the 2009 search. D.E. 90 at 14. Independent contractor income is not subject to this reporting which only covers employees. Id. at 11-12. A musician who plays at a bar would generally not receive wages covered by this database, nor would the owner of a trucking company. Id. at 11-12, 14.

When questioned after his arrest, Maldonado could not explain to the DEA agent where he picked up the load of tile and sinks, which the agent found to be unusual. D.E. 88 at 179. Maldonado denied knowledge of the marijuana in his truck. D.E. 88 at 166, 197. The addresses on the bill of lading for the load Maldonado was hauling when stopped were fictitious at both ends. D.E. 88 at 180-81, 184, 244-45, 247-48. The telephone number on the bill of lading appeared to be a cell phone. That phone was never answered when government agents called. Id. at 184-85. According to the DEA agent, the cell phone number on the bill of lading was registered to individuals that do not exist. Id. at 204. The phone number Maldonado gave the agents for Chato matched the number on the bill of lading. Id. at 199.

Before working for Transport 59, Maldonado claimed he was the owner and operator of Maldonado Trucking. When DEA agents checked databases for the period from 1995 through April 2007, the agent found no registration for the company in the Texas Department of Transportation database or the United States Department of Transportation database. After 2007, Maldonado claimed that he worked for another trucking company. That employment was verified. The defense

put on no witnesses. D.E. 89 at 25. The jury convicted Maldonado on Count One of the Indictment. D.E. 69.

**D.     Sentencing and Appeal**

The Probation Department prepared the Presentence Investigation Report (PSR). D.E. 74. Maldonado's base offense level was 32, based upon the quantity of marijuana seized. D.E. 74 at ¶ 14. He had no scorable criminal convictions and his criminal history category was I. Maldonado's sentencing guideline range was 121-151 months, with a statutory minimum sentence of 10 years. Id. at ¶¶ 36-37.

Maldonado was sentenced on February 17, 2010 to 121 months imprisonment, 5 years supervised release, no fine and a $100 special assessment. D.E. 79. Judgment was entered on the docket on February 19, 2010. Maldonado timely appealed. D.E. 77. The Fifth Circuit Court of Appeals affirmed, holding that the testimony of Jose Torres and wage records were properly admitted during trial. Maldonado filed his § 2255 motion to vacate, set aside or correct sentence on September 5, 2011. D.E. 109. It is timely.

### III.  MOVANT'S ALLEGATIONS

Maldonado raises a single claim of ineffectiveness of counsel on the ground that counsel failed to call Maldonado's bookkeeper to testify regarding Maldonado's tax returns to prove that he had legitimate income.

### IV.  ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction

to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

**B.     Ineffective Assistance of Counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).[2]

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry

---

[2] "[T]his court adopted the "any amount of jail time" test in United States v. Grammas. This test originated from the Supreme Court's decision in Glover v. United States where the Court explained that any amount of additional jail time has significance under Strickland. This court determined that the "any amount of jail time" test applies where the defendant was convicted after the Supreme Court's decision in Glover." Id. (internal citations omitted).

6

if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C. Trial Counsel's Alleged Ineffective Assistance

Maldonado claims that counsel's performance was deficient because he did not call Maldonado's bookkeeper to testify at trial. Maldonado claims that her testimony would have established that he had legitimate income from which he purchased the 1999 Freightliner in 2008.

Maldonado attached the first pages of his tax returns from 1997, 2006, and 2008 to his Memorandum of Law in support of his motion to vacate. D.E. 110-2. The pages attached reflect that the names on the returns are that of Dionicio Maldonado and his spouse and that he claimed two minor dependents. In 1997, the return reflects no wages and $18,811 in business income. In 2006, the return reflects wages of $386 and business income in the amount of $23,255. In 2008, no wages and $15,211 in business income. The pages Maldonado produced are not signed by Maldonado or the bookkeeper, nor is the Schedule C attached to identify the name of the person who earned the business income. Maldonado's attached tax returns cannot be considered evidence and do not assist this Court because they are incomplete and do not reflect the name of the tax preparer he claims should have been called to testify. Maldonado has produced no evidence, such as an affidavit from the bookkeeper, to support his claim that she would have testified favorably for him and would have been available and willing to appear in court in Corpus Christi, Texas.

In general, "complaints of uncalled witnesses are not favored . . . ." in post-conviction proceedings. Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 1997). "[W]hen 'the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views the claims of ineffective assistance with great caution.'" Id. (quoting Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)). A defendant's failure to present some evidence from the uncalled witness regarding that

7

witness's potential testimony and willingness to testify is usually fatal to an ineffective assistance of counsel claim. Id.; see also Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir.1985). The decision whether to present a witness is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified is too uncertain." Alexander, 775 F.2d at 602.

Defense counsel's Affidavit states that he interviewed the bookkeeper witness and discussed the witness with Maldonado before trial. Counsel thought that the witness would not be helpful in explaining the source of the cash Maldonado used to buy the tractor. D.E. 116-1. Additionally, if the first page of the tax returns Maldonado attached accurately reflect Maldonado's self-employment income from the trucking business, his family of four lived on $23,641 in 2006 and on $15,211 in 2008. These tax returns do not establish sufficient income for Maldonado to pay $26,000 in cash in 2008 for the truck, supporting counsel's belief that testimony would not have been useful.

Considering the record before the Court and the deference this Court is required to show counsel's strategic decisions, the Court does not find that Maldonado has met his burden to prove that counsel's conduct fell below reasonable professional standards or that the absence of the witness prejudiced Maldonado.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Maldonado has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires

an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Maldonado is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Maldonado's motion to vacate, set aside or correct his sentence (D.E. 109) is DENIED, additionally, Maldonado is DENIED a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 2nd day of May, 2012.

JOHN D. RAINEY  
SENIOR U.S. DISTRICT JUDGE